FOR PUBLICATION

ATTORNEY FOR APPELLANT
: 
ATTORNEY FOR APPELLEE
:

RICHARD A. BIERLY
 
RODNEY L. SCOTT

Wyatt, Tarrant & Combs Ward, Tyler & Scott

New Albany, Indiana New Albany, Indiana

IN THE

COURT OF APPEALS OF INDIANA

ROBERT L. WILLIAMSON, )

)

Appellant, )

)

vs. ) No.  22A01-9808-CV-319

)

DONALD E. WILLIAMSON, )

)

Appellee. )

APPEAL FROM THE FLOYD SUPERIOR COURT

The Honorable Richard G. Striegel, Judge

Cause No.  22D01-9401-ES-002

August 20, 1999

OPINION - FOR PUBLICATION

RUCKER, Judge

This appeal arises out of a dispute between two brothers over their father's estate.  When Appellee Donald E. Williamson filed a final accounting and closing statement, his brother, Appellant Robert L. Williamson, objected.  The trial court overruled the objection and approved the final accounting.  Determining that Robert's conduct was frivolous, unreasonable, and groundless or that Robert had pursued the matter in bad faith, the trial court also entered an award of attorney's fees in Donald's favor.  Robert now appeals raising three issues for our review which we consolidate and rephrase as:  (1) did the trial court err in approving the final accounting, and (2) did the trial court err in awarding Donald attorney's fees. 

We affirm in part and reverse in part. 

Facts

Robert and Donald are the sole heirs of Claude Williamson who died in December 1993.  Claude left a Will that provided in essence that the brothers would share their father's estate equally.  On January 14, 1994, the Will was admitted to probate and Donald was appointed as personal representative.  The estate was unsupervised.  Prior to Claude's death, Donald also had been appointed as his father's guardian.  The guardianship was not closed until January 1995.  The record shows that at the time of death, Claude's estate was valued at approximately $963,000.00.  The estate included a twelve-acre tract of land located at 4418 Charlestown Road.  It is the dispute over this property that generated the most heat before the trial court and provides the basis for the primary issues raised in this appeal.  The essential facts are these.  Donald lives at 4420 Charlestown Road.  Although he has the right of ingress and egress, Donald's property is completely surrounded by the 4418 property.  On the date of Claude's death, the twelve-acre tract was appraised at $107,500.00 for inheritance tax purposes.  In July 1997 Robert obtained two separate appraisals for the tract, one of which valued the property at $175,000.00 and the other at $114,000.00.  In December 1997 Donald proceeded to obtain a bank loan securing it with the 4418 property.  The purpose of the loan was to obtain funds to pay Robert his distributive share of the estate.  Shortly thereafter, Robert delivered a handwritten note to Donald's attorney purporting to offer to purchase the 4418 property for $200,000.00.  Donald disregarded the purported offer, assigned a value to the property in the amount of $141,250.00, and executed a deed transferring the property to himself.  

On January 14, 1998, Donald filed a closing statement that included a final accounting.  The statement showed that disbursements had been made, or were to be made, to both brothers in the approximate amount of $400,000.00.  The statement also showed a disbursement to Donald in the amount of $10,000.00 as a guardianship fee.  On February 4, 1998, Robert filed a written objection to the closing statement contending, among other things, that (1) Donald unilaterally conveyed all of the real property in the estate to himself without Robert's consent, (2) Donald assigned unrealistically low values to the 4418 Charlestown Road property thus diminishing the amount of Robert's distributive share of the estate, and (3) Donald paid himself a $10,000.00 fee for services as a guardian without court authorization.  The matter proceeded to hearing on June 17, 19, and 30, 1998.  Thereafter,  the trial court entered its judgment approving the closing statement and final accounting. Upon Robert's prior written request the trial court supported its judgment with special findings and conclusions thereon.  In a post-hearing motion Donald sought costs and attorney's fees on grounds that Robert's objection to the closing statement and final accounting became frivolous, unreasonable and groundless when his deposition was taken on June 8, 1998.  On November 2, 1998, the trial court entered a written order granting the motion and assessing attorney's fees and costs against Robert in the amount of $5,026.55. This appeal followed in due course.  Additional facts are set forth below where relevant. When a trial court has made special findings of fact pursuant to Ind. Trial Rule 52, as it did in this case, our standard of review is two-tiered.  First we determine whether the evidence supports the findings, and second whether the findings support the judgment.  
Bloodgood v. Bloodgood
, 679 N.E.2d 953, 956 (Ind. Ct. App. 1997).  We "shall not set aside the findings or judgment unless clearly erroneous."  T.R. 52(A); 
Breeden v. Breeden
, 678 N.E.2d 423, 425 (Ind. Ct. App. 1997).  The trial court's findings of fact are clearly erroneous if the record lacks any evidence or reasonable inferences to support them.  
Id.
  A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions relying on those findings.  
DeHaan v. DeHaan
, 572 N.E.2d 1315, 1320 (Ind. Ct. App. 1991), 
trans.
 
denied
.  In reviewing the trial court's entry of special findings, we neither reweigh evidence nor reassess witness credibility.  
Bloodgood
, 679 N.E.2d at 956.  Rather, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them.  
Yates-Cobb v. Hays
, 681 N.E.2d 729, 733 (Ind. Ct. App. 1997). 

Discussion

I.

Robert first complains that by conveying the Charlestown Road property to himself and by assigning a value to the property in the amount of $141,250.00, Donald engaged in inappropriate self dealing and breached his fiduciary duty.  Thus, according to Robert, the trial court abused its discretion by approving the distribution.  A personal representative is regarded as a trustee appointed by law for the benefit of and the protection of creditors and distributees.  
Fall v. Miller
, 462 N.E.2d 1059, 1061 (Ind. Ct. App. 1984).  In some jurisdictions purchases of estate assets by personal representatives at their own sales are merely voidable. 
See
 generally 31 Am Jur 2d, 
Executors and Administrators
 § 831 at 415 (1989).  However in this jurisdiction, in the absence of a family settlement or agreement, such purchases are void.  "[I]t has been the settled law of Indiana since its beginning, that a probate personal representative of the deceased is a trustee of the estate assets and will not be permitted to purchase the property himself as an individual from himself as the personal representative." 
Matter of Estate of Garwood
, 272 Ind. 519, 400 N.E.2d 758, 764 (1980) (setting aside a conveyance of real estate where personal representative acted as seller and deeded property to himself as an individual purchaser); 
but
 
cf
. 
Matter of Estate of Hensley
, 413 N.E.2d 315, 317  (Ind. Ct. App. 1980) (affirming a conveyance of real estate by the personal representative to himself where decedent's Will anticipated such authority).  The policy behind the prohibition on the transfer of estate property by the personal representative to himself or herself is to eliminate any hint of impropriety or fraud.  As the court in 
Garwood
 explained:

[I]t matters not that there was no fraud contemplated and no injury done.  The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it. . . . [I]t matters not how innocent and bona fide and free from suggestion of fault the transaction may be, nor how harmless or even beneficial the interference of the trustee may have been, the trustee can never, by his own act, shake off the equity of the 
cestui que
 trust to have the benefit of all that he does in the scope of the trust . . . .

400 N.E.2d at 764 (quoting 
Potter v. Smith
, 36 Ind. 231, 239-240 (Ind. 1871) (emphasis omitted).)

In this case the trial court entered findings indicating that Robert's purported offer to purchase the Charlestown Road property was not sincere and that his interest in the property was motivated only by his desire to increase his cash distribution from the estate.  The trial court also entered findings indicating that the appraisal of the property in the amount of $175,000.00 was based on its highest and best use as a commercial or residential development.  However, the appraisal did not take into account the limitations of the property, namely: the lack of sewers, soil limitations, and septic problems.  Thus, the $141,250.00 figure that Donald assigned to the Charlestown Road property more accurately reflected its true value.  We reject Robert's contention that there was no evidence to support the trial court's findings.  We also reject Robert's argument that his purported offer to purchase the Charlestown Road property was made in earnest.  The evidence of record supports the view that Robert had no desire actually to own the property.  Rather, he was simply posturing in an attempt to increase his share of the estate and to impede Donald's ownership of the property.  Apparently the animosity between the brothers is intense.  Further, we disagree with Robert's inference that Donald engaged in some form of impropriety by conveying the Charleston Road property to himself.  The record does not support such a notion.

 Nonetheless the trial court's judgment is clearly erroneous.  Based on its findings the trial court concluded that Donald's conveyance of the property to himself was "the only rational way to distribute said property in light of its location and interdependence upon Donald E. Williamson's property at 4420 Charlestown Road, in light of the 30 plus years of residency of Donald E. Williamson at or near the property, and in light of the fact that joint ownership was not feasible in light of the breakdown of the relationship between Donald Williamson and Robert Williamson."  R. at 213.  It is clear to this court that the foregoing conclusion is supported by the trial court's findings.  However, the findings along with the conclusions on which the findings are based, do not support the trial court's judgment.  The trial court did not find, nor does the evidence show, that Claude Williamson's probated Will anticipated the authority of the personal representative to convey estate property to himself as an individual purchaser.  In like fashion, the trial court did not find, nor does the evidence show, there was a settlement or an agreement between the two brothers permitting Donald, as personal representative of the estate, to purchase the Charlestown Road property.  Absent either of the foregoing contingencies, Donald's purchase of the property is void and the deed conveying the property to Donald must be set aside.  
See
 
Garwood
, 272 Ind. at 528-29, 400 N.E.2d at 764; 
Hensley
, 413 N.E.2d at 318.  We therefore reverse the judgment of the trial court on this issue and remand this cause for further proceedings. 

II.

Robert next contends the trial court erred in approving that portion of the final accounting in which Donald made a $10,000.00 disbursement to himself as a guardianship fee.  The disbursement was made after the guardianship was closed and after an agreed order approving the guardian's final accounting had been entered.  No guardianship fee was received during the course of the guardianship; nor was a fee requested as a part of the guardian's final accounting.
(footnote: 1)  Taking notice of Donald's service as guardian, and hearing evidence concerning the reasonableness of the disbursement, the trial court approved the fee as a debt of the estate. 

Two provisions govern payment of guardianship fees incurred on behalf of a guardianship estate.  First, Indiana Code § 29-3-4-4 which controls protective proceedings and single transactions provides:

If not otherwise compensated for services rendered, any guardian . . . whose services are provided in good faith and are beneficial to the protected person or the protected person's property is entitled to reasonable compensation and reimbursement for reasonable expenditures made on behalf of the protected person.  These amounts may be paid from the property of the protected person as ordered by the court. 

Second, Ind. Code § 29-3-9-3 which governs matters other than appointment provides:

A guardian is entitled to reasonable compensation for services as guardian and to reimbursement for reasonable expenditures made in good faith on behalf of the protected person.

Here, Robert challenges the trial court's finding that the fee represents a debt of the estate. He also argues that Donald was not entitled to pay himself any such fee after the guardianship was closed.  It is true that the guardian of a ward's estate has a duty to pay all just debts due from the ward out of the estate in his hands.  Ind. Code 29-3-10-1; 
Appeal of Wickersham
, 594 N.E.2d 498, 501 (Ind. Ct. App. 1992).  It is also true that services performed on behalf of the ward may give rise to a debt against the ward's estate.  However, "claims cannot be raised after the estate has closed."  
Trinkle v. Leeney
, 650 N.E.2d 749, 752 (Ind. Ct. App. 1995).  The approval of a final accounting, settlement, and closure of an estate is a final judgment on the claims against the estate and bars a claim for a debt unless the court sets aside its judgment.  
See
 
Id.
 (discussing probate proceedings which are made applicable to guardianship proceedings through Ind. Code § 29-3-2-6); 
see
 
also
 
McGahan v. National Bank of Logansport
, 151 Ind. App. 658, 281 N.E.2d 522 (1972) (A final settlement of an estate "is conclusive on interested parties until set aside by appeal or proceeding brought for that purpose.").

In this case Donald's final accounting in the guardianship proceeding did not mention a fee for services as guardian.  In like fashion the final accounting apparently did not list a guardianship fee as a debt of Claude Williamson's guardianship estate.  Once the trial court approved the final accounting, Donald's claim for a guardianship fee was barred unless he first petitioned the trial court to set aside its judgment.  
Trinkle
, 650 N.E.2d at 752.  He filed no such petition.  Thus, the trial court erred in approving the fee as a part of the probate estate. Nonetheless, the error in this case was harmless.  The record shows that Robert contested the payment of the fee during the hearing on the final accounting in the probate proceedings. Although before the trial court Robert seemed to challenge the reasonableness of the fee, he makes no such challenge on appeal.  Indeed, he specifically states "Robert does not argue that there was insufficient evidence to find that a $10,000.00 fee might have been payable by the guardianship if the proper and timely approval had been sought from the guardianship court." Reply Brief of Appellant at 14.  In essence Robert's complaint is that the fee should have been sought before the guardianship court rather than the probate court.  We agree.  However Robert has neither argued nor shown how he was harmed by the trial court's ruling.  On this issue the trial court is affirmed. 

III.

Last, Robert contends the trial court erred in awarding attorney's fees and costs in favor of Donald.  The record shows that after Robert filed his initial objection to Donald's final accounting and closing statement the parties engaged in discovery.  After Robert's deposition was taken on June 8, 1998, counsel for Donald forwarded a letter to counsel for Robert stating among other things:

[W]e are giving your client the option of dismissing his objections, with prejudice, on or before Monday, June 15, 1998.  This offer is being made pursuant to I.C. 34-1-32-1.  While we have substantial questions about the basis of the original filing, it is now clear that your client's claims against my client are frivolous, unreasonable and groundless.  In addition, it is clear from his deposition and the course of events during the guardianship and estate proceedings that your client is bent on harassing my client. . . .  It is a shame that the claim was bought after your client clearly had knowledge that the estate's evaluation of the property was actually generous when he admits in his deposition that he has no real basis for any of his other allegations.

R. at 233.  Robert did not withdraw his objections to the final accounting and the matter proceeded to a hearing.  At the conclusion of which the trial court overruled the objections and found in Donald's favor.  Donald then filed a petition for attorney's fees and costs.  The petition referenced Robert's deposition and the letter sent to Robert's counsel.  In a memorandum supporting the petition Donald asserted in part: 

[W]hile Robert L. Williamson was able to point to certain irregularities and/or mistakes in the Closing Statement, none of those mistakes caused Robert L. Williamson any damage or merited a change in the parties' distributions.  This was clear from the point of his deposition forward.  At that time, a continuation of the action against Donald E. Williamson, Sr. became frivolous, unreasonable and groundless.

R. at 243-44.  After entertaining arguments of counsel
(footnote: 2) and taking the matter under advisement, the trial court granted the petition and awarded costs and attorney's fees in Donald's favor.  

As part of the cost of litigation the court may award attorney's fees to the prevailing party provided the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

Ind. Code § 34-52-1-1.  We afford a multi-step review to an award of attorney's fees under the statute.  First, we review the trial court's findings of fact under the clearly erroneous standard, and second we review 
de novo
 the trial court's legal conclusions.  
St. Mary Medical Center v. Baker
, 611 N.E.2d 135, 137 (Ind. Ct. App. 1993), 
trans. denied
.  Finally, we review the trial court's decision to award attorney's fees and the amount thereof under an abuse of discretion standard.  
Id.
  

In its order granting the award of attorney's fees and costs the trial court declared "[t]he court now finds that Robert L. Williamson's continued pursuit of this matter after June 15, 1998 was frivolous, unreasonable and groundless and/or that this matter was pursued in bad faith and that, therefore, Donald E. Williamson, Sr., is entitled to attorney's fees and costs in defending said action."  R. at 270.  We first observe that the trial court's finding is more in the nature of a conclusion.  And it is not readily apparent on what specific facts the trial court's conclusion is based.  In any event, from the record before us it appears that the sole basis for the grant of the attorney fee award was Robert's continued objection to Donald's final accounting and settlement statement.  The primary objection raised by Robert had to do with Donald transferring the Charlestown Road property to himself.  We have already determined that Donald's purchase of the property is void.  Thus, Robert's position on this point was meritorious.  As a result, the underlying basis for an award of fees and costs under I.C. 34-52-1-1 has evaporated.  In sum, the evidence of record does not support the conclusion that Robert's continued objection to the final accounting and settlement statement was frivolous, unreasonable and groundless; nor does it support the conclusion that Robert pursued the matter in bad faith.  The award of attorney's fees and costs in Donald's favor is erroneous.  Therefore the trial court's judgment on this issue must be reversed. 

Conclusion

Because there was no family settlement or agreement and because the decedent's Will did not provide for the transfer of real estate by the personal representative to himself, Donald's purchase of the Charleston Road property is void.  On remand the trial court is instructed to enter an appropriate order setting aside the deed of conveyance.  As for the payment of guardianship fees, such fees should have been requested before the guardianship estate was closed, or once closed, a petition to reopen the estate should have been filed. Neither event occurred.  However, Robert acknowledges that Donald was entitled to fees for his services as guardian.  Further, during the probate proceedings Robert was afforded full opportunity to challenge not only the propriety of the request for guardianship fees but also the amount of the request as well.  The record supports the amount of the award, and Robert  has not demonstrated how he was harmed by the trial court's treatment of this matter.  Finally, we disagree that Donald is entitled to attorney's fees.  The evidence of record does not support the conclusion that Robert's continued objection to his brother's final accounting and settlement statement was frivolous, unreasonable and groundless, or that Robert pursued the case in bad faith.  The judgment of the trial court is thus affirmed in part and reversed in part.  This cause is remanded for further proceedings.

BAKER, J., and BROOK, J., concur.

FOOTNOTES
1:  Although the order approving and allowing the guardian's final accounting appears in the record, the actual accounting itself is not before us.  However, a colloquy between the parties at the hearing on this matter reveals that neither the final accounting nor the order approving the same addressed the issue of guardianship fees.  
See
 R. at 317-18.

2:  The record is not clear whether an evidentiary hearing was conducted.  We also note that Robert's deposition is not before us.