# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 28 2017, 7:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darlene R. Seymour
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Robert D. Wickens
Wickens & Wickens, LLC
Greensburg, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

In re the Marriage of

H.M.A.,

*Appellant-Petitioner,*

v.

A.D.A.,

*Appellee-Respondent.*

December 28, 2017

Court of Appeals Case No.
03A01-1708-DR-1684

Appeal from the Bartholomew
Superior Court

The Honorable Timothy B. Day,
Special Judge

Trial Court Cause No.
03D02-1206-DR-2868

**Bailey, Judge.**

# Case Summary

H.M.A. ("Mother") and A.D.A. ("Father") have one child between them, G.A. ("Child"), who was born on January 21, 2006. When Child was born, Mother and Father were in the process of dissolving their marriage. The trial court later entered a dissolution decree that, *inter alia*, awarded Mother primary physical custody and sole legal custody. The instant case arises from a petition to modify custody, which Father filed in early 2017. Following a hearing, the trial court entered a modified custody order under which Father has primary physical custody and Mother and Father have joint legal custody. Mother now appeals, presenting the sole restated issue of whether the trial court abused its discretion in modifying the physical custody arrangement.[1]

We affirm.

# Facts and Procedural History

By the time Child was born in 2006, Mother and Father were in the process of dissolving their marriage of several years. The trial court entered a dissolution decree on November 14, 2006, at which time the trial court ordered that Mother have primary physical custody and sole legal custody—an arrangement to which Mother and Father had agreed through a partial settlement agreement.

---

[1] Neither party directs argument to the trial court's decision to establish joint legal custody.

[4]     Thereafter, Mother and Father married other people, and Father became a parent to six additional children, one of whom is in Child's grade level. Child regularly spent time with Father and his family, who lived about a seventy-five minute drive away from Mother.

[5]     Near the end of Child's fourth-grade year at a public school in Columbus, Mother became concerned about Child's safety, privacy, and well-being because of a bathroom policy in place at Child's school. Mother researched other schools and decided that Child would attend an online school for fifth grade, which Child began attending in August of 2016. Child's attendance at the new school generated an unexpected workload, with Child studying as many as seven days per week and, at times, more than twelve hours per day. Child disliked attending the online school, which was a source of tension between Child and Mother, and Child began to lose touch with her friends from the public school. The educational arrangement also produced tension between Mother and Father, who already had a strained relationship.

[6]     Father filed the instant petition to modify custody on January 17, 2017, and a hearing was held on June 30, 2017. At the hearing, Father sought primary physical custody and indicated that he would like joint legal custody. Evidence adduced at the hearing included testimony from Child's Guardian Ad Litem (the "GAL"), who recommended that Father have primary physical custody. The trial court took the matter under advisement, and ordered that Father have primary physical custody and that Mother and Father have joint legal custody.

This appeal ensued.

# Discussion and Decision

We review an order modifying child custody for abuse of discretion, *Wilson v. Myers*, 997 N.E.2d 338, 340 (Ind. 2013), which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it, including the reasonable inferences to be drawn therefrom. *Truelove v. Truelove*, 855 N.E.2d 311, 314 (Ind. Ct. App. 2006). Moreover, where, as here, the trial court has, *sua sponte*, entered written findings and conclusions, we "shall not set aside the findings or judgment unless clearly erroneous," and we must give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). As to the issues covered by the findings, we apply the two-tiered standard of "whether the evidence supports the findings, and whether the findings support the judgment." *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). We review remaining issues under the general judgment standard, whereby we affirm the judgment if it can be sustained "on any legal theory supported by the evidence." *Id.* at 123-24. Furthermore, in conducting our review, we consider the evidence in a light most favorable to the judgment, *id.* at 124, remaining mindful of the "well-established preference in Indiana 'for granting latitude and deference to our trial judges in family law matters.'" *Id.* (quoting *In re Marriage of Richardson*, 622 N.E.2d 178 (Ind. 1993)).

Pursuant to Indiana Code Section 31-17-2-21(a), the trial court "may not modify a child custody order unless: (1) the modification is in the best interests

of the child; and (2) there is a substantial change in one . . . or more of the factors that the court may consider" in making an initial custody determination. Ind. Code § 31-17-2-21(a). In making an initial custody determination, the trial court "shall consider all relevant factors," and our legislature has identified a non-exhaustive list of factors that bear on a custody determination, including:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

I.C. § 31-17-2-8. The trial court must consider these factors before modifying custody, I.C. § 31-17-2-21(b), but it need not (1) specify the factor(s) that substantially changed or (2) explain why modifying custody is in the child's best interests. *In re Paternity of P.R.*, 940 N.E.2d 346, 351 (Ind. Ct. App. 2010) (citing *Kanach v. Rogers*, 742 N.E.2d 987, 989 (Ind. Ct. App. 2001)). Moreover, the parent seeking to modify custody bears the burden of demonstrating that modification is warranted. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

[10] Mother argues that the trial court abused its discretion in modifying physical custody of Child, asserting that Father "presented no evidence of any substantial change in circumstances." Appellant's Br. at 11. Although the trial court did not expressly identify a substantially changed circumstance, the court observed that Child "did not adjust well to being home schooled by [M]other." App. Vol. II at 16. Furthermore, there was significant testimony directed to Child's poor adjustment to the change in schooling. *See* I.C. § 31-17-2-8 (identifying adjustment to school as a factor relevant to a custody determination). The GAL testified that, from Child's perspective, the school year had been "terrible" and that it had "affected [Child] in a lot of different ways." Tr. at 7. Indeed, Mother acknowledges that there was a "dispute about school" that affected her relationship with Child. Appellant's Br. at 12. The GAL testified that "[t]here wasn't a lot of guidance" as Child completed the online work, and Child "got away with what she could get away with." Tr. at 20-21. According to Father, once Child got behind in her schoolwork, Child

"lost complete interest in the program" and "kind of put herself down." Tr. at 34. The evidence also indicates that the online program affected Child socially, as she lost touch with friends and spent long hours catching up on her work.

[11] In her appellate briefs, Mother focuses on caselaw supporting the principle that "a child's wishes, standing alone, cannot support a change in custody." Appellant's Br. at 13. Mother asserts that Father's request for custody "had nothing to do with [Child's] education and everything to do with [Child's] desires," and she posits that "everyone in this case simply wanted to please an eleven-year[-]old child, including the trial court." *Id.* at 14. Yet, irrespective of Father's motivations, the evidence supports a reasonable conclusion that there had been a substantial change regarding Child's adjustment to her school, which is a relevant factor expressly identified by our legislature. *See* I.C. § 31-17-2-8. Moreover, to the extent Mother argues that any change was not substantial because Child's welfare was not "in danger," Appellant's Br. at 12, Indiana law does not impose this requirement. *See* I.C. §§ 31-17-2-21(a), -2-8.[2]

[12] Mother also challenges the trial court's determination that custody modification was in Child's best interests. Mother argues that she had always been Child's

---

[2] In setting forth a standard for custody modification, Mother cites to *Swonder v. Swonder*, 642 N.E.2d 1376 (Ind. Ct. App. 1994), for the proposition that modification must be "necessary for the welfare of the child involved." Appellant's Br. at 10. However, subsequent to the underlying hearing in *Swonder*, our legislature revised the standard for custody modification, *see Swonder*, 642 N.E.2d at 1379 n.1, and enacted the current two-part "best interests" and "substantial change" framework for custody modification. *Compare* I.C. § 31-1-11.5-22(d) (1993) (permitting custody modification "only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable") *with* I.C. § 31-1-11.5-22(d) (1994); *see also Joe v. Lebow*, 670 N.E.2d 9, 17-21 (Ind. Ct. App. 1996) (analyzing aspects of the revisions).

primary caregiver, and that Father had been less involved in Child's life. Thus, according to Mother, to promote continuity and stability in Child's life, it was in Child's best interests for Mother to retain primary physical custody. Mother also directs us to evidence indicating that she had planned to send Child to a private school, rectifying what, "in hindsight, may have [been] a poor decision." Appellant's Br. at 12. She asserts that "[i]f a custodial parent were to be judged upon one regrettable decision, changes in custody would be in a constant state of flux." Reply Br. at 6. Additionally, Mother highlights evidence indicating that Father discusses mature topics with Child, and she argues that Father improperly treats Child "as an adult" rather than "acting in her best interest as a young child." Appellant's Br. at 11.

[13]    Yet, we are not free to reweigh the evidence, *see Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011), which indicates that Child has a close relationship with Father, and was well adjusted to Father's home, where she would be able to attend school with a sibling. Moreover, the GAL testified that Child was "very vocal about wanting to live with [Father]," Tr. at 6, where, in the wake of the previous school year, Child felt "socially . . . more connected" and "[a]cademically . . . more secure and stable." Tr. at 7. Here, the change in schooling impacted multiple aspects of Child's life. Although Mother was prepared to bring back a sense of academic stability and social connectedness as Child entered sixth grade, viewing the evidence in a light most favorable to the judgment, we cannot say that the trial court clearly erred in determining that modifying physical custody was in Child's best interests. *See Kirk*, 770 N.E.2d

at 308 (observing that stability, including stability in schooling, constitutes a "substantial determinant" in evaluating the best interests of a child).

# Conclusion

[14] The trial court did not abuse its discretion in modifying physical custody.

[15] Affirmed.

Kirsch, J., and Pyle, J., concur.